IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE; THE WILDERNESS SOCIETY; and NATURAL RESOURCES DEFENSE COUNCIL;<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; UNITED STATES BUREAU OF LAND MANAGEMENT; and AHMED MOHSEN, Manager of Price Field Office,<br><br>Defendants,<br><br>XTO ENERGY, INC.,<br><br>Intervenor-Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART INTERVENOR-DEFENDANT'S MOTIONS TO DISMISS, AND GRANTING PLAINTIFFS' REQUEST FOR LEAVE TO FILE AN AMENDED COMPLAINT**<br><br>Case No. 2:15-cv-00194-JNP-EJF<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Evelyn J. Furse |

    Before the court are two partial motions to dismiss. The United States Department of the Interior ("DOI"), United States Bureau of Land Management ("BLM"), and Ahmed Mohsen (collectively the "Federal Defendants") filed a motion to dismiss the first and fourth causes of action alleged in the Amended Complaint (Docket 13). Intervenor-Defendant, XTO Energy, Inc., ("XTO"), then filed a motion to dismiss the first, second, and third causes of action alleged in the Amended Complaint (Docket 20).

    On December 15, 2015, the court held a hearing on all pending motions to dismiss. The court then took the motions under advisement. After careful consideration of the record, relevant law, and the parties' memoranda, the court GRANTS the Federal Defendants' motion to dismiss the first and fourth causes of action alleged in the Amended Complaint (Docket 13) and

1

GRANTS IN PART AND DENIES IN PART Intervenor-Defendant XTO's motion to dismiss the first, second, and third causes of action alleged in the Amended Complaint (Docket 20). Finally, the court GRANTS the motion for leave to file an amended complaint filed by Plaintiffs Southern Utah Wilderness Alliance, The Wilderness Society, and Natural Resources Defense Council (collectively "SUWA").

## FACTUAL BACKGROUND

SUWA challenges the BLM's decision to issue four oil and gas leases to XTO. The four oil and gas leases at issue are located in the West Tavaputs Plateau in Carbon County, Utah. This region is within the Uintah Basin, where significant oil and gas development has taken place in the last ten years. In this same time period, air quality monitors have detected numerous exceedances of federal air quality standards in the Uintah Basin. Oil and gas development results in ozone precursor emissions and the recent oil and gas development in the region is likely the dominant source of ozone precursor emissions. These emissions can have various harmful effects on humans and the environment.

SUWA alleges that the Price Resource Management Plan ("RMP"), which governs the area covering the four leases, requires that all BLM and BLM-authorized activities maintain air quality within the thresholds established by the National Ambient Air Quality Standards ("NAAQS"). In response to the BLM's draft environmental assessment and finding of no significant impact ("FONSI"), SUWA raised its concerns regarding the impact of oil and gas leasing on air quality. Subsequently, in the BLM's Final Lease Sale Environmental Assessment, the BLM attached an air quality stipulation and air quality notice to the leases. The four leases issued to XTO did not authorize oil and gas development without the submission and approval of an application for a permit to drill. XTO has since received approval to drill on only one of the

parcels. This approval authorizes seven natural gas wells and the construction of related infrastructure on Parcel 19.

In addition to its concerns regarding air quality, SUWA alleges that the lease parcels are located on lands with wilderness characteristics. These lands include some that are considered in BLM memoranda to be a crucial habitat for greater sage-grouse, a candidate species for listing as threatened or endangered. SUWA alleges that the BLM did not follow internal policy memoranda when it reached its decision to issue the leases. These memoranda include: 1) BLM Instruction Memorandum ("IM") 2010-117, issued by the Washington D.C. Office of the BLM to field offices on May 17, 2010, which requires BLM offices considering leases to evaluate the proposed action, a no action alternative, and any alternative to the proposal that addresses unresolved resource conflicts; and 2) Secretarial Order 3310, an order from the Secretary of the Interior issued on December 22, 2010, which states that the policy of the DOI is to avoid impairment to lands with wilderness characteristics and requires documentation of efforts to avoid impairments when making resource management decisions.

With respect to approving the application for permit to drill, SUWA alleges that the BLM failed to follow internal policy memoranda in both its decision to approve the permit and its Determination of NEPA Adequacy ("DNA"). Specifically, SUWA alleges that the BLM's DNA and drill permit approval failed to follow IM 2012-043, issued on December 22, 2011, which requires the BLM to make efforts to protect unfragmented greater sage-grouse habitat by minimizing adverse effects to greater sage-grouse habitat prior to approving of drill permits. SUWA further alleges that while the West Tavaputs Plateau Final Environmental Impact Statement and accompanying Record of Decision (WTP FEIS/ROD) contained special measures to protect greater sage-grouse habitat, the BLM did not follow these requirements in arriving at

its DNA and in issuing its decision authorizing the development of the oil and gas wells and associated infrastructure on one of the leases.

## ANALYSIS

SUWA raises four challenges to the BLM's issuance of the leases and approval of XTO's application for a permit to drill. Specifically, SUWA asserts a claim under the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.*; two claims under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*; and a claim alleging a direct violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. Each of these claims is the subject of one or both of the motions to dismiss and will be addressed in turn.

**I.      SUWA's First Claim**

SUWA's first claim for relief alleges that the Federal Defendants violated FLPMA when the BLM issued four oil and gas lease parcels to XTO. SUWA also argues that the BLM's decision to issue the leases was arbitrary, capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A). SUWA's claim rests on the allegation that the BLM is bound under FLPMA to follow the Price RMP. SUWA alleges that under the Price RMP all BLM and BLM-authorized activities must maintain air quality within the thresholds established by the NAAQS. Given current exceedances in the NAAQS within the Uinta Basin, SUWA asserts that the development of leases sold in the November 15, 2011 lease sale will result in ozone precursor emissions in the region and greater exceedances of the NAAQS in violation of the Price RMP and FLPMA.

The Federal Defendants respond that SUWA's FLPMA claim is not ripe and should be dismissed. "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (quoting *Nat'l Park Hosp. Ass'n v.*

4

*Dep't of Interior*, 538 U.S. 803, 807 (2003)). Thus, the ripeness inquiry asks not only whether the alleged harm has been realized at the time of trial, but also whether the harm "has matured sufficiently to warrant judicial intervention." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975)). While "rooted in the 'cases and controversies' requirement of Article III, the ripeness doctrine also reflects important prudential limitations on a court's exercise of jurisdiction." *Id.* As a result, the court may determine that while an issue satisfies the "constitutional standard for ripeness, prudential considerations" require the conclusion that the issues in the case are premature and do not yet warrant judicial intervention. *Id.*

In evaluating "whether the issues presented by this case are ripe for review," the court considers "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)). The court addresses fitness and hardship in turn.

### A.   Fitness

The issues raised in SUWA's FLPMA claim are not currently fit for judicial decision. To determine the fitness of an issue for judicial decision, the court asks "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quoting *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995)). At oral argument, all parties agreed that the oil and gas leases at issue do not authorize any drilling or exploratory work that would disrupt the surface of the land. As alleged in SUWA's Amended Complaint, it is the "development of leases sold in the November 15, 2011 lease sale" that "will result in ozone precursor emissions." Therefore, until an application for a permit to drill is filed and approved, the leases will not result in ozone precursor emissions. Moreover, the court cannot determine at this time whether the Federal Defendants will approve

applications for permits to drill. And, if an application for permit to drill is approved, the court has no way of determining now whether approval of drilling will cause ozone precursor emissions that exacerbate exceedances of NAAQS in the Uinta Basin. It is entirely possible that ozone emissions in the Uinta basin will decline in the interim such that any future drilling would not cause exceedances of NAAQS. It is also possible that any approved drilling permits will impose conditions to ensure that drilling will not exacerbate exceedances in NAAQS.

In sum, SUWA's Amended Complaint challenges only the issuance of the leases to XTO. And all parties agree that the leases do not allow for activity that might generate ozone precursor emissions. SUWA's FLPMA claim is contingent on showing ozone precursor emissions that exacerbate or cause exceedances of NAAQS. Thus, whether such emissions will ever occur is an "uncertain or contingent future event[] that may not occur as anticipated, or indeed may not occur at all." *See id.* (quoting *New Mexicans for Bill Richardson*, 64 F.3d at 1499). The court therefore concludes that SUWA's FLPMA claim is unfit for judicial determination at this juncture.

### B.      Hardship

SUWA likewise experiences no hardship to its interests as asserted under its FLPMA claim. The court evaluates hardship by asking "whether the challenged action creates a direct and immediate dilemma for the parties." *Id.* The sole harm or dilemma alleged in SUWA's FLPMA claim is the emission of ozone precursors that cause exceedances of NAAQS in the Uinta Basin. But the issuance of the leases does not authorize any development that might result in ozone precursor emissions, let alone emissions that cause exceedances of NAAQS. As such, there is no present dilemma that imposes a hardship on SUWA.

Because SUWA's FLPMA claim is not fit for immediate judicial determination and SUWA experiences no present hardship, the court dismisses SUWA's FLPMA claim as unripe.

In its surreply to the Federal Defendants motion, SUWA requested leave to amend the complaint to challenge the issuance of the seven-well permit to drill on Parcel 19 in the event the court found its FLPMA claim regarding the leases unripe. Under Rule 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Because the case is still in the initial stages of litigation, the court grants leave for SUWA to amend the complaint to challenge the issuance of the seven-well permit to drill on Parcel 19.

## II. SUWA's Second and Third Claims

XTO asserts that SUWA's second and third claims under NEPA should be dismissed under Rule 12(b)(6). Specifically, XTO asserts that the allegations in SUWA's second and third causes of action consist of conclusory legal statements rather than factual allegations sufficient to make the claims plausible on their face. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To do so, a plaintiff must plead both a viable legal theory and "enough factual matter, taken as true, to make [the] 'claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is not required to include detailed factual allegations, but the complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and ultimately must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court reviews SUWA's second and third causes of action in turn.

### A. SUWA's Second Cause of Action

Under its second cause of action, SUWA asserts that the Federal Defendants violated NEPA in failing to take a hard look at the impact of the leases on air quality and other aspects of the environment. "The role of the courts in reviewing compliance with NEPA is simply to ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary and capricious." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1163 (10th Cir. 2002) *modified on reh'g*, 319 F.3d 1207 (10th Cir. 2003) (quoting *Utah Shared Access All. v. U.S. Forest Serv.*, 288 F.3d 1205, 1208 (10th Cir. 2002)). To do this, courts apply a "rule of reason standard (essentially an abuse of discretion standard) in deciding whether claimed deficiencies . . . are merely flyspecks, or are significant enough to defeat the goals of informed decisionmaking and informed public comment." *Id.*

In its motion to dismiss, XTO focuses on SUWA's claim that the Federal Defendants failed to take a hard look at the impact of the oil and gas leases on air quality. But XTO does not address SUWA's allegations relating to other types of environmental harm. Specifically, XTO points to the paucity of allegations relating to air quality and notes that all allegations relating to air quality are either recitations of legal principles or conclusory statements lacking factual support.

The court agrees with XTO. As currently pleaded, SUWA's only allegations regarding air quality are conclusory. SUWA asserts that the BLM violated NEPA in not taking a hard look at "the effects of leasing parcels 17, 18, 19, and 22 on air quality," but this allegation is a mere legal conclusion. SUWA's other allegations involving air quality also fail to support a plausible claim for relief because they do not set forth any non-conclusory rationale for how the BLM's actions fell below NEPA requirements.

SUWA first alleges that oil and gas development leads to increased emissions and harm to the environment. SUWA then discusses the manner in which the Final Lease Sale Environmental Assessment addressed the issue of air quality by providing for one air quality stipulation and one air quality notice. Taking these facts as true, they show that the BLM considered the impact of air quality in the environmental assessment and ultimately incorporated an air quality stipulation and notice into the final approval of the leases. SUWA fails to plead any facts that raise the NEPA claim on air quality standards beyond the speculative level.

Because the BLM considered the impact of development on air quality, SUWA's conclusory allegation of a NEPA violation is insufficient to survive a 12(b)(6) motion to dismiss. Nonetheless, the Rule 15 standard is to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This case is still in its initial stages, and the court is already allowing SUWA leave to amend its first claim for relief. Consequently, the court allows SUWA an opportunity to amend its complaint to include more specific factual allegations regarding what the BLM failed to consider or explain in its environmental assessment in order to raise its right to relief beyond the speculative level.

Although the court agrees that SUWA has not sufficiently pleaded that the BLM violated NEPA with respect to air quality standards, SUWA has sufficiently pleaded a NEPA violation with respect to other types of environmental harm. Indeed, in its motion to dismiss, XTO does not even address SUWA's allegations that the BLM failed to take a hard look at other environmental harms before approving the lease sales. And SUWA's allegations on this issue are factually sufficient to state a plausible NEPA violation arising from the BLM's failure to adequately consider the direct and indirect impacts to the environment from oil and gas exploration and development on XTO's NE24 Pad. For example, SUWA alleges that the BLM

9

did not take into account Instruction Memorandum 2010-117 and Secretarial Order 3310 in preparing its environmental assessment nor adequately explain its rationale for not following these directives. These allegations are sufficiently particular to survive XTO's motion to dismiss.

      **B.**      **SUWA's Third Cause of Action**

XTO also moves to dismiss SUWA's third cause of action alleging that the BLM violated NEPA by considering only the proposed action and a no action alternative. In reviewing whether the BLM considered a reasonable range of alternatives, the court applies a "rule of reason." *Wyoming v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1243 (10th Cir. 2011). Under this rule, the agency must first appropriately define an action's objectives. *Id.* at 1244. Once the objectives are defined, the agency need only consider reasonable alternatives in detail. *Id.* Nonetheless, the agency must briefly discuss the reasons for eliminating other alternatives from detailed study. *Id.*

XTO asserts that SUWA failed to include specific factual allegations demonstrating that the BLM did not address a possible reasonable alternative. The court disagrees. SUWA alleges that the BLM failed to consider a reasonable range of alternatives because the BLM limited its review to the proposed action and a no action alternative without explaining its rationale for limiting its consideration to these two proposals. SUWA also alleges that the BLM similarly failed to explain its reasons for departing from the IM 2010-117 directive. In alleging both a failure to consider a wider range of alternatives and a failure to explain its rationale for not doing so, SUWA alleges a plausible NEPA claim.

**III.**      **SUWA's Fourth Claim**

SUWA's fourth cause of action alleges that the BLM's DNA and approval of five rights of way were arbitrary and capricious because the BLM failed to follow IM 2012-043, which outlines a procedure for reviewing proposals that may affect greater sage-grouse habitat. The parties do not dispute that IM 2012-043 is an internal policy document that is not the product of

10

rulemaking or adjudication. As such, it does not have the force of law. *See AMREP Corp. v. Fed. Trade Comm'n*, 768 F.2d 1171, 1178 (10th Cir. 1985). Nonetheless, the exclusive basis for relief alleged in SUWA's fourth claim for relief is that the "BLM's failure to follow IM 2012-043 was arbitrary, capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A)."

Section 706(2)(A) of the APA provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5.U.S.C. § 706(2)(A). Contrary to SUWA's insistence at oral argument, this provision does not create independent substantive rights. *See Utah Shared Access All. v. Wagner*, 98 F. Supp. 2d 1323, 1333 (D. Utah 2000) *aff'd sub nom. Utah Shared Access All.*, 288 F.3d 1205. There is simply "no right to sue for a violation of the APA in the absence of a relevant statute whose violation forms the basis for the complaint." *Id.* (quoting *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789, 792 (8th Cir. 1996)).[1] That is, the court must have a substantive legal backdrop against which it can evaluate whether an agency's decision was in fact arbitrary, capricious, or contrary to law.

Here, SUWA alleges only a failure to follow the "requirements" of a non-binding internal policy memorandum. SUWA completely fails to allege that this failure rendered the BLM's decision arbitrary and capricious *under some relevant statute*. While "an agency's unexplained failure to consult its own decisional guidelines can be the makings of a claim for arbitrary decisionmaking and the basis for reversal," *ACAP Fin., Inc. v. U.S. Secs. Exch. Comm'n*, 783 F.3d 763, 767 (10th Cir. 2015), it is unclear from the Amended Complaint what the relevant

---

[1] *See also El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir. 1991) ("The district court granted summary judgment as to the plaintiffs' . . . third cause of action, brought under the APA. . . . Plaintiffs rely on 5 U.S.C. § 702. Section 702 does not create substantive rights." (citations omitted)).

statute is that provides the substantive legal backdrop against which the court must conduct its APA arbitrary and capricious review.

At oral argument, the court pressed SUWA to identify the statute against which the court should conduct its review under the APA. But SUWA insisted that its fourth claim for relief was a "freestanding APA claim" and that SUWA was not alleging a violation of any other statute. It is entirely possible that in failing to explain its decision not to consult or follow IM 2012-043, the BLM's decision to grant the rights of way was arbitrary and capricious in light of statutory requirements. The problem is that IM 2012-043 might inform BLM obligations under multiple statutes, each with different requirements. Not only is it outside the court's domain to identify the possible statutes at issue and incorporate them into SUWA's fourth claim for relief, but SUWA also affirmatively and persistently maintains that it is not alleging the violation of any other statute. As argued, SUWA's fourth claim for relief fails to state a claim. Review under the APA must be conducted in light of a relevant statute that forms the legal backdrop for determining whether an agency's decision was arbitrary, capricious, or contrary to law.

In its opposition to the motion to dismiss, SUWA moved for leave to amend its fourth claim for relief if the court determined that it was inadequately pleaded. Rule 15 requires the court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The principle basis for dismissing SUWA's fourth claim for relief might be remedied by an amendment. On this basis, the court grants SUWA's motion for leave to amend its fourth claim for relief in order to state the relevant statute or statutes that SUWA alleges provide the legal backdrop for assessing whether the BLM's failure to follow its internal policies was arbitrary, capricious or contrary to law.

## CONCLUSION

For the foregoing reasons, the court dismisses SUWA's first claim for relief under FLPMA on ripeness grounds, but grants SUWA leave to amend to incorporate claims arising from the seven-well permit to drill on Parcel 19. The court also dismisses SUWA's second claim for relief to the extent it alleges a NEPA violation arising from the BLM's failure to adequately consider the impact of issuing leases on air quality inasmuch as these allegations do not raise a plausible claim for relief. The court again grants SUWA leave to amend this claim to incorporate more specific factual allegations regarding what the BLM should have but did not consider. Finally, the court dismisses SUWA's fourth claim for relief for failure to state a claim on which relief may be granted, but the court grants SUWA's motion for leave to amend this claim in order to allege the relevant statute or statutes that provide the legal backdrop for reviewing the BLM's action under the APA. With respect to all other claims, the Federal Defendants' and XTO's motions to dismiss are denied. SUWA must file its amended complaint no later than April 15, 2016.

Signed March 30, 2016.

BY THE COURT

Jill N. Parrish
United States District Court Judge